UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
LOUIS B. CUSHMAN,

                        Plaintiff,

          -against-

BRENT BORLAND and BORLAND CAPITAL GROUP,

                        Defendants.
---------------------------------------------------------------X

17 Civ. 1795

COMPLAINT

JURY TRIAL DEMANDED

Plaintiff Louis B. Cushman ("Plaintiff" or "Cushman"), as and for his Complaint herein as against defendants Brent Borland ("Borland") and Borland Capital Group ("BCG", and together with Borland, "Defendants"), alleges as follows.

Nature Of The Action

1. This action arises out of Borland's egregious fraudulent misstatements made to Cushman with the intent of deceiving him into investing $1 million (the "Investment") into Belize Infrastructure Fund I, LLC ("BIF"), which Investment was purportedly to be used as a bridge loan to fund the alleged expansion of an airport in Belize purportedly known as the Placencia International Airport ("Placencia International Airport" or "PIA") (the "Project"), which Borland represented to Cushman opened in December 2015 and was on track to be completed by the end of 2016.

2. Cushman relied on Borland's statements and as a result invested $1 million. However, Cushman has recently learned that Borland's statements are false. For example, and as more fully set forth below, the Placencia International Airport in fact did <u>not</u> open in December 2015. Further, the Placencia International Airport is not, and never was, on track to be completed by the end of 2016 or any time in the foreseeable future because, among

other reasons, (i) major international airlines will not fly there because the Philip Goldson International Airport ("BZE") in Belize City is so close that there is no need for a second major international airport in Belize, and (ii) an inspection has revealed that the specifications and foundation of the Placencia International Airport are not sufficient to bear the weight of international jet planes.

3. Moreover, it has become apparent that Borland knew his representations were false when made, and that Borland made such false representations in order to raise monies to attempt to pay off creditors on his other, separate investments in Belize. It appears that Borland did not use, and has no intention of using, Cushman's monies to develop the Placencia International Airport. As more fully set forth below, Borland made numerous other pre-Investment, material, fraudulent misstatements as well.

4. Accordingly, Cushman is entitled to recover his $1 million Investment, interest in an amount not less than $150,000, punitive damages, attorneys' fees and costs. Nevertheless, Defendants have refused to pay the amounts owed, despite due demand.

<u>The Parties, Jurisdiction and Venue</u>

5. Cushman is a citizen of the State of Texas, residing in Houston, Texas.

6. Upon information and belief, Borland is a citizen of the State of New York or the State of Florida, and is not a citizen of Texas.

7. Upon information and belief, BCG is a citizen of the State of New York, with its principal place of business located at 79 Madison Avenue, 2nd Floor, New York, NY 10016, and is not a citizen of Texas.

8. The amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.

9. This Court has subject matter jurisdiction over this action pursuant to 28

U.S.C. § 1332.

10. This Court has personal jurisdiction over Defendants pursuant to CPLR 301 and CPLR 302(a). Borland regularly does business in his individual capacity and/or as Principal and Founder of BCG at his main office and BCG's principal place of business and headquarters located at 79 Madison Avenue, 2nd Floor, New York NY 10016, as evidenced by the web pages at BCG's website. Indeed, BCG's domain address and Borland's email domain address are www.bcg*nyc*.com and @bcg*nyc*.com, respectively (italics added). Further, Borland's LinkedIn profile provides that he is Founder and Managing Director of BCG in "New York, New York" and that BCG is "headquartered in New York City". (See generally Exhibits A, B, C and G annexed hereto). In addition, upon information and belief, Borland resides in New York County, with addresses at 404 Park Avenue South, New York, NY and/or 333 E. 14th Street, New York, NY. Moreover, Borland's mobile phone, which he used to communicate with Cushman, uses a New York area code of 917.

11. Further, upon information and belief, Borland and BCG (i) have regularly transacted business in the State of New York and/or regularly contracted to supply goods or services in the State of New York (see generally Exhibit G; www.bcgnyc.com; and www.brentborland.com), and/or (ii) committed one or more of the fraudulent acts and omissions complained of herein within the State of New York.

12. Venue is proper in New York County pursuant to CPLR 503 and CPLR 509 because, upon information and belief, Borland and/or BCG reside in New York County, and/or because Cushman designates New York County for this action.

FIRST CAUSE OF ACTION

(Fraud and Fraudulent Inducement, against Defendants)

13. Cushman repeats and realleges each and every allegation above as if fully set forth herein.

14. In or about January 2016, Cushman's brokers at Paulson Investment Company, LLC ("Paulson"), namely Joseph J. Hede ("Hede"), Kevin R. Graetz ("Graetz") and Ahmed G. Gheith ("Gheith", and together with Hede and Graetz, the "Paulson Brokers") strongly recommended the Investment to Cushman and referred him to Borland.

15. Cushman thereafter had numerous communications with Borland, both by telephone and email. Borland represented to Cushman that the Investment was a bridge loan to be used to fund the Placencia International Airport. Borland further represented that he was awaiting only the formality of back-stop insurance from Aon, and that Cushman's full $1 million Investment, plus an additional $150,000, would be paid to Cushman upon maturity. However, Cushman has recently learned that these representations are false, in whole or in part.

16. Further, Borland made numerous other pre-Investment representations to Cushman that are false, in whole or in part, including, but not limited to, the following:

   a. That the Placencia International Airport opened in December 2015 (see email dated January 17, 2016 annexed hereto as Ex. A at Executive Summary pp. 17-18);

   b. That the Placencia International Airport was scheduled for "completion in late 2016" (see email dated February 23, 2016 at 4:30 pm annexed hereto as Ex. B);

   c. That Borland personally invested in the Placencia International Airport

Project (see Ex. B);

d. that Graetz and Hede personally invested in the Placencia International Airport (see Ex. B);

e. that warrants consisting of 1% ownership of the Placencia International Airport were additional consideration to be received by Cushman for making the Investment (see Ex. B and email dated February 23, 2016 at 3:26 pm annexed hereto as Ex. C);

f. that development, construction and expansion of the Placencia International Airport had commenced and was underway (see Ex. A at Executive Summary pp. 15-16);

g. that "CTL" was providing a $45 million loan to fund "the completion of Placencia International Airport", which loan was scheduled to close in "Q1 of 2016" (see Ex. A);

h. that, at or about the time of Cushman's Investment, only $1 million was left to be raised on the $5 million bridge loan (see Ex. C).

17.     Cushman has since learned information demonstrating that such representations are false, in whole or in part.  For example, Cushman has learned that the Placencia International Airport did not open in December 2015, was not scheduled for completion by the end of 2016, has not been opened anytime since, and is in fact closed.

18.     Cushman has also learned that there in fact were not and are not plans to develop the Placencia International Airport because, inter alia, (i) the major international airlines are content with nearby Philip Goldson International Airport in Belize City and there is no need for a second international airport in Belize, and (ii) an inspection has revealed that the

specifications and foundation of the Placencia International Airport are not sufficient to bear the weight of international jet planes.

19. Moreover, it has become apparent that Borland knew his representations were false when made, and that Borland made such false representations in order to raise monies to attempt to pay off creditors on his other, separate investments in Belize, having nothing to do with the Placencia International Airport. It appears that Borland did not use, and has no intention of using, Cushman's monies to develop the Placencia International Airport.

20. Cushman, through his attorneys, confronted Borland with the fraud by demand letter dated January 25, 2017 (see Ex. D annexed hereto). Borland, by text message to Cushman dated January 26, 2017 (see Exhibit E annexed hereto), claimed that he has "an audit from Deloitte evidencing the funds invested" in the Placencia International Airport. Tellingly, however, Borland did not provide any Deloitte audit, despite due demand. Borland also did not produce any other documents recently requested by Cushman and/or his counsel, including documents evidencing how Cushman's Investment was used and/or where the money went, documents evidencing any and all investments by Borland or the Paulson Brokers in the Placencia International Airport, and documents evidencing the other $5 million in bridge financing allegedly raised by Borland. (See generally Ex. E). Borland's refusal to provide any of such documentation further evidences Borland's fraudulent conduct.

21. Borland's representations, in whole or in part, were materially false when made.

22. Borland made such representations with knowledge of their falsity and with the intent to deceive Cushman and to induce Cushman to make the Investment.

23. Cushman's reliance on Borland's representations was and is reasonable

and justifiable, for numerous reasons. First, Cushman's Paulson Brokers referred Cushman to Borland. Cushman trusted his Paulson Brokers based on their past business relationship and therefore had no reason to doubt Borland's veracity. Second, Borland represented that he himself and certain of the Paulson Brokers personally invested in the Placencia International Airport, which further caused Cushman to rely on Borland's representations. Third, Borland presented what seemed like hard facts and photographs to bolster his representations (see, e.g., Exs. A-C inclusive and Executive Summary in Ex. A). Cushman had no reason to doubt that Borland's representations were anything other than true and correct.

24. At the time of Borland's fraudulent conduct, he was an employee, principal, owner and/or agent of BCG, and therefore his conduct is imputed to BCG, whether under doctrines of respondent superior, apparent authority, vicarious liability or control person liability.

25. Accordingly, Cushman has been damaged in an amount to be determined at trial, but not less than $1 million, plus interest in an amount not less than $150,000, plus punitive damages, attorneys' fees and costs to the extent allowable by law.

## SECOND CAUSE OF ACTION

(Unjust Enrichment, in the alternative, against Defendants)

26. Cushman realleges each and every allegation set forth above as if fully set forth herein.

27. Upon information and belief, Borland and/or BCG have pocketed or otherwise misappropriated the Investment.

28. Defendants' receipt and retention of the Investment has conferred an unearned and undeserved benefit upon Defendants, allowing Defendants to enrich themselves

unjustly and at the expense of Cushman.  It is against equity and good conscience to permit Defendants to retain this benefit.

29. Accordingly, Cushman has been damaged in an amount to be determined at trial, but not less than $1 million, plus interest, attorneys' fees and costs to the extent allowable by law.

THIRD CAUSE OF ACTION

(Breach of Guaranty, in the alternative, against Borland)

30. Cushman repeats and realleges each and every allegation above as if fully set forth herein.

31. As set forth above, as a result of Borland's fraudulent conduct set forth above, Cushman made the Investment of $1 million in BIF.  BIF executed a promissory note dated March 17, 2016 (the "Note", a copy of which is annexed hereto as Ex. F) in favor of Cushman in the amount of $1 million, plus interest at a rate of 15% per annum for the first year, and 12% per annum thereafter, due and payable by no later than March 18, 2017.

32. Defendants have advised Cushman that the Note will not be paid when due, or at any time in the near or foreseeable future.

33. Payment of the Note was guaranteed by Borland and Marco Caruso, jointly and severally, under certain circumstances (the "Personal Guarantee"; see Ex. F at Ex. B).  One such circumstance is if the collateral under the Real Estate Pledge and Security Agreement annexed as Exhibit A to the Note is impaired.  Such collateral is purportedly real property described as "Placencia North Block 36 Parcel 2169 Known as Lot 31" (the "Collateral"; see Ex. F at Ex. A p. 2).

34. Upon information and belief, the Collateral is impaired.  Accordingly,

under the Personal Guarantee, Borland is responsible for the entire obligation under the Note. Given Defendants' representations that the Note will not be paid or honored when due and the repudiation thereof, and because the Collateral is impaired, Borland is required to immediately pay the amounts due under the Note.

35. As set forth above, Borland has refused to reimburse Cushman for his Investment and interest owed, despite due demand.

36. Accordingly, Cushman has been damaged in an amount to be determined at trial, but not less than $1 million, plus interest in an amount not less than $150,000, plus punitive damages, attorneys' fees and costs to the extent allowable by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Cushman requests judgment as follows:

(i) On the First Cause of Action, damages in an amount to be determined at trial, but not less than $1 million, plus interest in an amount not less than $150,000, plus punitive damages, attorneys' fees and costs to the extent allowable by law;

(ii) On the Second Cause of Action, damages in an amount to be determined at trial, but not less than $1 million, plus interest, attorneys' fees and costs to the extent allowable by law;

(iii) On the Third Cause of Action, damages in an amount to be determined at trial, but not less than $1 million, plus interest in an amount not less than $150,000, attorneys' fees and costs to the extent allowable by law; and

(iv) For such other and further relief as the Court deems just and proper.

| | |
|---|---|
| Dated: New York, New York<br>March 10, 2017 | SULLIVAN & WORCESTER LLP<br><br>By: /s/ Gerry Silver<br>    Gerry Silver<br>1633 Broadway, 32nd Floor<br>New York, New York 10019<br>Telephone:  (212) 660-3000<br>Facsimile:   (212) 660-3001<br>gerry.silver@sandw.com<br>Attorneys for Plaintiff Louis B. Cushman |